# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.* Hector H.
Balderas, Attorney General,

        Plaintiff,

    vs.                                                                        No. 1:21-CV-00255-WJ-LF

GILEAD SCIENCES, INC., GILEAD
SCIENCES, LLC (F/K/A BRISTOL-MYERS
SQUIBB & GILEAD SCIENCES, LLC),
BRISTOL-MYERS SQUIBB, and TEVA
PHARMACEUTICALS USA, INC.,

        Defendants.

## **MEMORANDUM OPINION AND ORDER GRANTING NEW MEXICO'S MOTION TO REMAND and DENYING NEW MEXICO'S REQUEST FOR COSTS AND FEES**

THIS MATTER comes before the Court on Plaintiff State of New Mexico's ("New Mexico," or the "State") Motion to Remand, filed April 22, 2021 (the "Motion") (**Doc. 34**). Defendants Gilead Sciences, Inc. and Gilead Sciences, LLC (together "Gilead") and Bristol-Myers Squibb ("BMS") responded on May 13, 2021. Doc. 56. Briefing was completed on May 27, 2021. Docs. 59 & 60. In ruling on the Motion, the Court also considered Gilead and BMS's Motion to Transfer or, in the alternative, to Stay. Docs. 31, 32, 33. The Court, having considered the relevant motions and memoranda, the applicable law, and otherwise being fully advised in this matter, finds that New Mexico's Motion to Remand is well-taken and, therefore, is GRANTED. Consequently, Defendants' Motion to Transfer or, in the alternative, to Stay is DENIED as MOOT. Further, pursuant to 28 U.S.C. § 1447(c), the Court DENIES New Mexico's request that it be awarded just costs and actual expenses, including attorney fees, incurred as a result of the removal.

**Background**

New Mexico initiated this action[1] against Gilead, BMS, and Teva Pharmaceuticals, U.S.A. ("Teva") on February 24, 2021, when it filed a Complaint for Violations of New Mexico's Antitrust Act and Unfair Practices Act (the "Complaint," Doc. 1-2) in the First Judicial District Court, County of Santa Fe, New Mexico, as Case No. D-101-CV-2021-00377. The Complaint alleges: (a) two counts of Unreasonable Restraint of Trade, in violation of the New Mexico Antitrust Act (the "NM Antitrust Act"), NMSA 1978 § 57-1-1; (b) one count of Unlawful Monopolization, in violation of the NM Antitrust Act, NMSA 1978 § 57-1-2; (c) one count of Unlawful Attempted Monopolization, in violation of the NM Antitrust Act, NMSA 1978 § 57-1-2; (d) two counts of Conspiracy to Monopolize, in violation of the NM Antitrust Act, NMSA 1978 § 57-1-2; and (e) one count of Violations of the New Mexico Unfair Practices Act ("NMUPA"), NMSA 1978 § 57-12-1.

On its face, the Complaint seeks no relief under federal law and specifically disavows any implied federal claims.[2] *See* Compl. ¶¶ 23, 29. New Mexico alleges that Defendants engaged in "long-running fraudulent and coordinated schemes, unlawful restraints of trade, and deceptive business practices" with the goal and result of "curtailing generic competition" and "excessively inflated pricing" for HIV treatments Viread, Truvada, Atripla, Vemlidy, and Descovy.[3]

---

[1]  The Motion characterizes this lawsuit as an exercise of the enforcement powers of the State *parens patraie*. Doc. 34 at 6. Defendants point out that the Complaint does not use this label and, somewhat contrarily, asserts that "the State does not bring this action on behalf of a class or any group of persons" and that all Medicaid reimbursement claims "are brought solely by the State and are wholly independent of any claims that individual users" of HIV treatment may have. Doc. 56 at 8. Whether this is a "true" *parens patriae* action is, at this point, irrelevant to any determination of subject matter jurisdiction, but the Court notes that Defendants use their Response brief to reserve the right to raise subject matter jurisdiction under the Class Action Fairness Act at a future point in the litigation if appropriate. *Id.* at 27.

[2]  The Court, of course, will not defer to this rote disavowal. It must examine the nature and dimensions of the claims contained in the plaintiff's well-pleaded complaint.

[3]  Like the Complaint, this Memorandum Opinion and Order will use "HIV Medications," a term which includes Viread, Truvada, Atripla, Vemlidy, Descovy, and any generic versions of the same.

medications"). Compl. ¶ 2. The Complaint's core factual underpinnings concern: "sham" patent litigations in the Southern District of New York between Gilead and Teva, which resulted in the parties entering into "reverse payment" settlement agreements (Counts I and V); the joint venture agreement between Gilead and BMS (Counts II and VI); the alleged delay in launching tenofovir alafenamide fumarate ("TAF") and pre-exposure prophylaxis products (Counts III and IV); and violations of the New Mexico Unfair Practices Act (Count VII). New Mexico seeks damages, including restitution and disgorgement of the Defendants' allegedly unlawful profits, and an order enjoining Defendants from continuing the alleged deceptive and unlawful acts. Compl. at 125–26.

On March 23, 2021, Defendant Gilead Sciences, Inc. removed this action pursuant to 28 U.S.C. §§ 1331 and 1441(a), alleging that New Mexico's claims raise substantial federal issues concerning: (a) patent validity and infringement under federal patent law; (b) the Hatch-Waxman Act, 21 U.S.C. § 355(j), a law governing competition between branded and generic pharmaceuticals; (c) the FDA regulatory scheme; and (d) the federal Medicaid scheme as it relates to government payors. Doc. 1 at 5–15. If properly proved, these allegations would allow a federal court to find an embedded "federal question" that would confer the proper subject matter jurisdiction.

In addition to arguing against remand, Defendants use the Response brief to ask that the Court first rule on the Motion to Transfer, or in the Alternative, to Stay before addressing the Motion to Remand. Doc. 56 The Court declines this request because, under these circumstances, transferring the case prior to deciding the remand issue would unnecessarily strain judicial resources in the Northern District of California, the putative transferee court. Stated another way, the remand issue should be decided by the undersigned judge instead of punting the remand issue,

involving questions of New Mexico law, to a district judge in the Northern District of California for decision.

**Legal Standard**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also State of New Mexico ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1229 (D.N.M. 2015) ("It is a foundational premise of American federalism that federal courts are courts of limited jurisdiction.") (internal quotation omitted). Having limited jurisdiction, federal courts do not presume jurisdiction to exist but require an adequate showing of jurisdiction from the party invoking it. *U.S. ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1278 (10th Cir. 2001) (internal citation omitted); *see also Kokkonen*, 511 U.S. at 377 ("[I]t is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction."). The parties asserting jurisdiction, here Gilead and BMS, are held to a preponderance of the evidence standard for this showing. *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). If Gilead and BMS fail to make a proper showing, then this case must be remanded to state court. *See* 28 U.S.C. § 1447.

Gilead Sciences, Inc. anchors its removal to § 1331, the "general federal-question statute," *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 787 n.2 (2014), which gives district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Under the long-standing doctrine of the "well-pleaded complaint rule," federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The plaintiff

4

is the "master" of the complaint and may keep an action in state court by relying exclusively on state law. *Id.* The anchoring federal question must be apparent on the face of the complaint rather than in any subsequent pleading or the notice for removal. *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1380 (10th Cir. 1978). Stated another way, "a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (internal citation omitted). Causes of action under state law may "arise under" federal law for purposes of § 1331 even when the complaint does not explicitly plead a federal cause of action if the four-pronged *Grable/Gunn* test[4] is met. Under this test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The United States Supreme Court's decisions on this type of "arising under" jurisdiction have suggested that the recognition of jurisdiction absent a federal cause of action is of limited scope, noting that only a "slim category" of cases satisfy the *Grable/Gunn* test. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). The Supreme Court has stressed that "it takes more than a federal element to open the arising under door," *id.*, and that mere allegations of a "federal issue" are not a "password opening federal courts to any state action embracing a point of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Thus, the "mere presence" of a federal issue in a state cause of action and the "mere assertion of a federal interest" are not enough to confer federal jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). On the other hand,

---

[4] The United States Supreme Court first announced this test in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). The Court subsequently clarified and further discussed how lower courts should apply this test in *Gunn v. Minton*, 568 U.S. 251 (2013).

a plaintiff cannot avoid federal subject matter jurisdiction by declining to plead "necessary federal questions." *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998).

So long as even a single claim involves a substantial federal question, the entire action is properly in federal court. *See Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1138 (10th Cir. 2014) ("[F]ederal jurisdiction over any one claim is sufficient to support removal."); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) (holding even "'if any one claim within Plaintiffs' complaint supports federal question jurisdiction, a federal court may assert jurisdiction over all the claims'") (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1233 (10th Cir. 2006)).

**Discussion**

**I.     The Court Lacks Subject Matter Jurisdiction Over the Complaint**

The Court concludes that remand is appropriate because Gilead and BMS fail to establish that New Mexico's state law claims necessarily raise a stated federal issue. The first prong of the *Grable/Gunn* test instructs this Court to determine whether the federal issues present in this case are "necessarily" raised. *See Grable*, 545 U.S. at 314. Under this analysis, a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Merrell Dow*, 478 U.S. at 808 (quoting *Franchise Tax Board*, 463 U.S. at 9). This Court reads the case law as stating that the claim's dependence on construction of federal law must be to such a degree that the claim could not be established absent resolution of a federal question. *See Gunn*, 568 U.S. at 259 (concluding that a Texas malpractice claim, in which the causation element necessitated a "case within a case" analysis, required the application of patent law to establish liability); *see also Grable*, 545 U.S. at 314–15 (finding that interpretation of 26 U.S.C. § 6335 was an essential element of a state law quiet title claim because the facts

establishing the superiority of the plaintiff's claim was premised solely "on a failure by the IRS to give it adequate notice, as defined by federal law"); *Merrell Dow*, 478 U.S. at 807 (affirming the Sixth Circuit's explanation that "[f]ederal question jurisdiction would . . . exist only if plaintiff's right to relief *depended necessarily* on a substantial question of federal law") (emphasis in original).

Defendants attempt to characterize the relevant inquiries as centering on a determination of the strength and validity of their patents, interpretation of the State's Medicaid rebate agreements with the U.S. Secretary of Health and Human Services, application of federal drug pricing laws, and proof that the U.S. Food and Drug Administration ("FDA") would have approved a new combination of branded/generic drugs. Gilead and BMS further argue that the State's claims rest on a "sole theory of causation" propped up by federal law. Doc. 56 at 17. The Court agrees with New Mexico that this is a mischaracterization. It is apparent from the face of the Complaint that New Mexico can establish the facts necessary for holding Defendants liable for breaches of state law without forcing a court to interpret or even apply federal statutes or regulations. For example, New Mexico alleges that:

- Gilead entered into unlawful, deceptive, and anticompetitive arrangements with BMS, Teva, and other unnamed entities to delay and suppress entry of cheaper generic versions of the HIV Medications. Compl. ¶ 3;

- Gilead deliberately and purposely withheld development and introduction of superior TAF for over a decade in order to extend its monopoly and earn out-sized profit margins on its tenofovir disoproxil fumarate ("TDF") based HIV Medications. Compl. ¶ 13;

- Once generic competition was imminent, Gilead finally introduced TAF, but engaged in a fraudulent and unlawful product happing scheme to switch TDF-based prescriptions to TAF-based prescriptions. *Id.*;

- When faced with generic competition, Gilead unfairly increased "the already exorbitant pricing for its HIV Medications to wring the last bit of available profits from its HIV franchises." Compl. ¶ 15;

7

- Gilead and BMS joined forces to commercialize and market Atripla, incorporating patent protected formulas from both companies to protect weak patents, impair and suppress generic competition and maintain supracompetitive pricing and profit margins. After the FDA approved Atripla, Gilead and BMS used an internal Joint Pricing Committee to ensure that Atripla would not undercut Gilead's own HIV Medications on the market at the time. Further, the joint venture agreement locked in BMS to exclusively supplying its patent protected efavirenz to the Gilead-BMS joint venture. Compl. ¶¶ 42–50.

- By knowingly entering unlawful and unfair settlement agreements in violation of the NM Antitrust Act that significantly raised and maintained pricing contrary to market dynamics, and engaging in deceitful and fraudulent marketing in violation of the NMUPA relative to prescriptions for HIV Medications for which reimbursement was sought from the State's Medicaid program caused the presentation and submission of reimbursement claims that billed the State's Medicaid program as if in compliance with the states law. Compl. ¶ 69;

- Gilead's untruthful and improper marketing campaigns concealed the anticompetitive settlement agreements, collusive business collaborations, anticompetitive conduct and violations of the NM Antitrust Act and NMUPA, causing hundreds if not thousands of false claims to be presented to and reimbursed by the State's Medicaid program that were inappropriate, not cost effective, and in contravention of state laws and regulations. Compl. ¶ 330; and

- Defendants violated the NMUPA by failing to state material facts that would adequately warn New Mexicans and the State itself about the anticompetitive deals, unfair and deceptive business practices, and increasingly inflated pricing of HIV Medications. Compl. ¶ 432.

Additionally, paragraph 36 of the Complaint contains New Mexico's broad categorizing of Defendants alleged efforts to engage in unlawful business conduct into three categories: the Gilead-Teva "reverse payment" settlement agreements, the Gilead-BMS joint venture and its ancillary agreements, and Gilead's sales and marketing decisions. Compl. ¶ 36. These scenarios, and the allegations listed above, do not necessarily "turn" on resolution of a federal question, even though patent law, the FDA drug approval process and federal Medicaid regulations loom in the background of all seven of the State's claims. Despite this backdrop, the inquiries at the core of this litigation will be whether Defendants engaged in conduct, including agreements, contracts, business ventures, development, pricing, and marketing, that violated the NM Antitrust Act and NMUPA.

With regards to the role patent law plays in New Mexico's antitrust claims based on the Gilead-Teva "reverse payment" settlement agreements, the United States Supreme Court has stated:

> It is normally not necessary to litigate patent validity to answer the antitrust question . . . . An unexplained large reverse payment itself would normally suggest that the patentee has serious doubts about the patent's survival. And that fact, in turn, suggests that the payment's objective is to maintain supra competitive prices to be shared among the patentee and the challenger rather than face what might have been a competitive market—the very anticompetitive consequence that underlies the claim of antitrust unlawfulness.

*FTC. v. Actavis, Inc.*, 570 U.S. 136, 157 (2013). The Court is persuaded that this conclusion applies with full force to the state antitrust claims against Gilead and Teva. The remaining five claims can similarly be decided without resorting to substantive application of federal law. The Complaint contains allegations that the Gilead-BMS joint venture involved price fixing schemes, exclusivity agreements, and contracts with anticompetitive termination penalties, all instances of conduct which appear to be independent of proving patent validity or compliance with a federal regulatory scheme. *See* Compl. ¶¶ 46–47. The monopolization and attempted monopolization claims against Gilead are in part based on allegations of Gilead anticompetitively withholding safer and more effective formulations and engaging in product-hopping and other deceptive marketing schemes. Compl. ¶¶ 54–59. Defendants are unable to sufficiently establish how proving these allegations would necessarily require resolution of a federal question. Finally, the NMUPA claim rests in part on an allegation that Defendants misrepresented "[t]he prices for HIV Medications being the results of normal competitive market forces" instead of the alleged anticompetitive agreements and business arrangements underlying the antitrust claims. Compl. ¶ 428. New Mexico could likely prove this allegation without resorting to federal law. While this case will inevitably involve theories of liability that demand consideration of federal law, the Court is persuaded by the United

9

States Supreme Court holding in *Christianson v. Colt Indus. Operating Corp.*, a case involving § 1338(a) jurisdiction, that "the well-pleaded complaint rule . . . focuses on claims, not theories," such that the mere fact that "an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire monopoly claim 'arises under' patent law." *Id.* at 811.

The Court finds that Defendants cannot sufficiently establish "arising under" jurisdiction because, while the Complaint raises many federal law-centric theories, it also reveals a plethora of theories of liability not centered on violations of federal law. Because New Mexico may very well be entitled to relief independent of federal law, Defendants' proffered anchors for "arising under" jurisdiction are not necessarily raised. *See Franchise Tax Board*, 463 U.S. at 25–26 (finding that the suit does not "arise under" ERISA because "the State's right to enforce its tax levies is not of central concern to the federal statute" and "on the face of a well-pleaded complaint there are many reasons completely unrelated to the provisions and purpose of ERISA why the State may or may not be entitled to the relief it seeks").

Having found that Defendants' attempt to establish subject matter jurisdiction failed at the first prong of the *Grable*/*Gunn* test, the Court will briefly address the remainder of the four-step test. On the second prong, the Court assumes without deciding that some portion of the federal issues present in this case are actually disputed. Gilead and BMS convincingly contend that a determination of whether New Mexico has proved its allegations of violations of the NM Antitrust Act and NMUPA will likely (but not necessarily) entail a substantive review of secondary issues such as whether Gilead's patents were "weak" or "invalid." *See Doran v. Purdue Pharma Co.*, 324 F. Supp. 2d 1147, 1151 (D. Nev. 2004) ("[T]he court must look to federal patent law to determine whether the target litigation was objectively baseless") (internal quotation marks omitted). On the

third prong, the Court assumes without deciding that the federal issues present in this case are not "substantial" because their adjudication does not have an impact on the federal system as a whole. *See Grable*, 545 U.S. at 313 (a substantial issue is one that "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum"). The Court rejects the argument that the federal government has a strong interest in New Mexico's state law claims simply because Defendants broadly construe several portions of the Complaint as containing critical allegations that Gilead interfered with the federal government's property interests or that Gilead and Teva committed fraud on a U.S. District Court and the U.S. Federal Trade Commission. Doc. 56 at 26. The Court disagrees, reading these sections of the Complaint as containing secondary, background details. The Court also rejects Defendants' assertion that the relevant issues center on "a nearly pure area of law" with regards to federal patent, FDA, and Medicaid law, *see* Doc. 56 at 24 (citing and quoting *Empire HealthChoice*, 547 U.S. at 681), that would generate a decision on the federal issues that "would apply to a fair number of disputes." Doc. 56 at 25 (quoting *Gilmore*, 694 F.3d at 1174). Specifically, Defendants assert that this case has widespread implications for government payors nationwide. Doc. 56 at 25. Defendants also point to the fact that a number of non-government end payors are suing Gilead and BMS in the Northern District of California in a cluster of cases consolidated and coordinated under the lead case *Staley v. Gilead Sciences, Inc.*, No. 3:19-CV-02573-EMC (N.D. Cal.). The consolidated complaint in *Staley* largely centers on federal antitrust claims. *See* No. 3:19-CV-02573-EMC (N.D. Cal.), Doc. 304 (pleading seven claims under the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, and seeking injunctive relief pursuant to the Clayton Antitrust Act, 15 U.S.C. § 26). The *Staley* consolidated complaint also contains seven claims of violations of the antitrust laws of approximately thirty states (including the NM Antitrust Act) and one claim of violations of the consumer protection laws of twenty-three states

(including the NMUPA). *Id.* Both *Staley* and the instant action seek injunctive relief. *Compare id.* ¶ 16, *with* Compl. ¶ 434. Based on its review of the two actions, the Court is still not convinced that either the overlap between this case and *Staley* or New Mexico's status as a government payor is significant enough to render the background federal issues "substantial."

Finally, having found that "arising under" jurisdiction has not been established, the Court will assume without deciding that Defendants' claim of jurisdiction further falters at the final prong of the *Grable/Gunn* test: whether a federal court could resolve the federal question without disrupting the federal-state balance approved by Congress. This analysis, when applied, allows for a federal court to exercise "a possible veto" on its exercise of "arising under" jurisdiction. *Grable*, 545 U.S. at 313; *see also Merrell Dow*, 478 U.S. at 812 ("[I]t would . . . flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation . . . is said to be a . . . 'proximate cause' under state law."). The New Mexico state court in which this suit was lodge is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine whether Defendants are liable under two of its state laws. *See Empire Healthchoice*, 547 U.S. 677, 681 (2006).

II. **New Mexico is Not Entitled to Costs and Attorney's Fees**

"[T]he standard for awarding fees should turn on the reasonableness of the removal." *Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* After reviewing New Mexico's request against

the vast federal law background of this case, the Court is unable to make a finding that Gilead Sciences, Inc. lacked an objectively reasonable basis for seeking removal. The Notice of Removal's reliance on federal law-based theories, while not establishing a "necessary" federal question, shows the existence of reasonable basis for removal. *See* Doc. 1. Accordingly, the Court will not award New Mexico its requested costs and fees.

## Conclusion

**THEREFORE,** for the reasons described in this Memorandum Opinion and Order, the Court hereby GRANTS the Motion to Remand and DENIES New Mexico's request for an award of cost and fees related to the removal.

**FURTHERMORE**, it is ORDERED that this action is REMANDED to the First Judicial District Court, County of Santa Fe, State of New Mexico. The Clerk of Court is directed to take the necessary actions to effectuate this remand.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE